**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ROBERT BALLANTINE,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-1530** |
| **UNITED STATES OF AMERICA,** | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

On May 12, 2025, Plaintiff Robert Ballantine initiated the above-captioned action in which he asserts a single negligence claim against Defendant United States of America pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.*.[1] ECF No. 1. Pending before the Court is the United States' motion for partial summary judgment, which is fully briefed. ECF Nos. 37–39. No hearing is necessary. Local Rule 105.6 (D. Md. Dec. 1, 2025). For the reasons set forth below, the motion is granted.

## I. BACKGROUND

### A. Relevant Allegations

This case arises from a collision that occurred on April 27, 2023, on Interstate 95 in Prince George's County, Maryland, involving a United States Postal Service (USPS) vehicle. ECF No. 1 ¶¶ 5–6. Mr. Ballantine alleges that the USPS employee operating the USPS vehicle "attempted to make an unsafe and improper lane change and struck the vehicle" that Mr. Ballantine was operating. *Id.* at ¶ 6. He further avers that the USPS employee negligently failed to keep proper control of the vehicle, look out for other vehicles, and yield the right of way, and that he changed lanes when it was unsafe to do so, all of which proximately caused a collision

---

[1] This case was referred to a United States Magistrate Judge with the parties' consent. ECF Nos. 9, 11–12; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

with Mr. Ballantine's vehicle. *Id.* at ¶ 8. Mr. Ballantine states that he filed an administrative claim with the USPS on July 30, 2024. ECF Nos. 1 ¶ 3; *see also* 28 U.S.C. § 2675. Mr. Ballantine contends that the USPS did not enter a final disposition of his claim within six months of the filing and therefore his claim is deemed to have been denied. ECF No. 1 ¶ 3; 28 U.S.C. § 2675(a). Having exhausted his administrative remedies, Mr. Ballantine initiated this action seeking $2,000,500 in damages for "great pain and injury, mental anguish, and . . . medical expenses." ECF No. 1 ¶¶ 3, 9.

**B. Relevant Undisputed Material Facts**

On November 21, 2019, Mr. Ballantine was seen by William H. Ulmer, Jr., doctor of osteopathic medicine (DO), at OSS Health "for orthopedic evaluation and treatment of left knee pain." ECF No. 37-2 at 1.[2] Mr. Ballantine "complain[ed] of a constant, sharp pain," which rated as a 7 on a 10-point scale. *Id.* Based on a physical examination and x-rays, Dr. Ulmer determined that Mr. Ballantine had osteoarthritis in his left knee.[3] *Id.* at 2. Dr. Ulmer prescribed medication and gave Mr. Ballantine a cortisone injection in his left knee. *Id.* at 3. On February 27, 2019, Mr. Ballantine was seen by physician assistant, certified (PA-C) Adam Lawrence at OSS Health in connection with his "degenerative joint disease" in his left knee. ECF No. 37-4 at 1–3. On this date, as well as on November 9, 2020; March 26, 2021; and September 1, 2022, Mr. Ballantine received a cortisone injection in his left knee. ECF Nos. 37-4 at 2; 37-5 at 2; 37-6

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document, except that page numbers of exhibits that are deposition transcripts refer to the page and line number of the deposition transcript.

[3] "Osteoarthritis" is "a common form of arthritis typically with onset during middle or old age that is characterized by progressive degenerative changes in the cartilage of one or more joints (as of the knees, hips, and hands) accompanied by thickening and overgrowth of adjacent bone and that is marked symptomatically chiefly by stiffness, swelling, pain, deformation of joints, and loss of range of motion." *Osteoarthritis*, Merriam-Webster.com, https://perma.cc/P5Y3-RL5U (last accessed Oct. 30, 2026).

at 1; 37-9 at 1–2. During a November 9, 2020 visit, PA-C Lawrence and Mr. Ballantine "discussed the reasons to proceed with a knee replacement, which [Mr. Ballantine] was contemplating for th[e] upcoming year." ECF No. 37-5 at 2. On April 28, 2021, Mr. Ballantine consulted with George Margetas, DO, "to discuss possible knee replacement surgery." ECF No. 37-7 at 1. Dr. Margetas diagnosed Mr. Ballantine as having "end-stage left knee arthritis" (*id.*), which he explained meant "the disease has progressed" and "the joint is now bone on bone" (ECF No. 38-1 at 12:21, 24–25). Dr. Margetas also noted that Mr. Ballantine "failed conservative care to include anti-inflammatory and injectables." ECF No. 37-7 at 1. Dr. Margetas explained at his deposition that as of the date of this visit, "the definitive treatment would be a knee replacement." ECF No. 38-1 at 14:10–11. Mr. Ballantine reported that he was "unable to have surgery at this time as he [was] caring for his elderly dog who was at end-of-life." ECF No. 37-7 at 1. Dr. Margetas also noted that Mr. Ballantine was "not a candidate for knee replacement surgery" at that time due to his weight and that Mr. Ballantine should "start working on weight reduction." *Id.* at 2. On September 1, 2022, Mr. Ballantine discussed knee replacement surgery with Brian L. Bixler, MD, who noted that Mr. Ballantine was "in need of a knee replacement." ECF No. 37-9 at 1. Dr. Bixler noted that Mr. Ballantine should follow up with Dr. Margetas when ready to schedule the knee replacement surgery. *Id.* at 2.

Following the motor vehicle accident, Mr. Ballantine received medical treatment from PA-C Jeremy Barth at Carroll Hospital on April 27, 2023. ECF No. 37-10 at 1–2. Mr. Ballantine reported "generalized soreness," as well as left shoulder pain and left knee pain, which he rated as a 7 on a 10-point scale. *Id.* at 2. His left knee x-ray "showed degenerative changes." *Id.* at 4. PA-C Barth noted that he had a "low concern for internal injury or significant trauma" as a result of the accident. *Id.* Mr. Ballantine was prescribed a muscle relaxer and instructed to follow up with his primary care physician. *Id.* at 5.

Mr. Ballantine sought treatment at OSS Health Urgent Care on May 5, 2023, at which time he reported "constant" "stabbing" pain that had "increased recently after [a] motor vehicle accident." ECF No. 37-11 at 1–2. An x-ray taken that same day revealed "significant degenerative arthritis" but "no signs of trauma." *Id.* at 2. During his deposition, Dr. Margetas reviewed the record of this encounter and explained that the x-ray "show[ed] the significant degenerative changes," but there were "no acute abnormalities." ECF No. 38-1 at 21:21–24. On May 10, 2023, Mr. Ballantine sought treatment at OSS Health Powder Mill, where he reported "difficulty with weightbearing and ambulating for several months" and that a motor vehicle accident "caused a flareup of knee pain." ECF No. 37-12 at 1. Mr. Ballantine indicated that he was "interested in proceeding with knee replacement" and that he had "lost around 20 pounds." *Id.* PA-C Charles Ferchalk noted that he consulted with Dr. Margetas, who thought it was appropriate for Mr. Ballantine to be placed on the surgical schedule. *Id.* at 2. Mr. Ballantine saw Dr. Margetas at OSS Health Powder Mill on June 28, 2023 for a "preop visit for his left knee replacement." ECF No. 37-13 at 1. During his deposition, Dr. Margetas agreed that "there was nothing emergent about [Mr. Ballantine's] knee [that required him] to have th[e] elective surgery." ECF No. 38-1 at 25:23–26:1. Mr. Ballantine elected to reschedule the surgery so he could participate in a "once in a lifetime hunt." ECF No. 37-13 at 1. Mr. Ballantine returned to OSS Health Powder Mill on October 20, 2023, to discuss his upcoming left knee replacement surgery with Dr. Margetas and indicated that he was "ready to proceed with surgery." ECF No. 37-14 at 1, 3.

Mr. Ballantine attested that while he had "experienced problems with his left knee and had consulted a doctor who recommended left knee replacement surgery," the motor vehicle accident "significantly aggravated [his] left knee pain." ECF No. 38-3 ¶¶ 3–4. Mr. Ballantine further attested that he "had a pre-existing left knee condition, but the accident made [his]

symptoms so much worse and led to [his] need to move forward with surgery." *Id.* at ¶ 8. Mr. Ballantine's amended expert witness disclosure identifies Dr. Margetas as an expert in the field of orthopedic surgery. ECF No. 37-16 at 2. The disclosure indicates that Dr. Margetas is expected to testify that, among other things, that Mr. Ballantine's "left knee osteoarthritis was greatly aggravated by the motor vehicle crash and that the knee replacement surgery was made necessary by this crash." *Id.* During his deposition, Dr. Margetas testified that he did not agree with that statement. ECF No. 38-1 at 28:21–29:4. Dr. Margetas stated that although Mr. Ballantine's left knee osteoarthritis was "aggravated by the crash," the knee replacement surgery was not "made necessary by the crash . . . because [Dr. Margetas] was going to replace it prior to the crash." *Id.* at 29:8–11.

## II. DISCUSSION

The United States seeks entry of summary judgment in its favor on the question of damages arising from or related to Mr. Ballantine's knee replacement surgery. ECF No. 37-1 at 13. The United States contends that Mr. Ballantine is precluded from recovering these damages because he had a preexisting condition and lacks the expert evidence necessary to establish that the surgery was causally connected to the accident. ECF No. 37-1 at 1–2, 13–18. Mr. Ballantine argues the opposite. Following discussion of the applicable standard of review, the parties' arguments are addressed below.

### A. Standard of Review

Summary judgment motion practice "is properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Federal Rule of Civil Procedure 56 provides that the district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original). A material fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To defeat summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). On the other hand, summary judgment "is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law."[4] *Sylvia Dev. Corp.* v. *Calvert Cnty, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

The United States Court of Appeals for the Fourth Circuit has cautioned that summary judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 2728 (3d ed. 1998)). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a

[4] "Rule 56 permits a litigant to move for partial summary judgment, and for the Court to resolve certain issues at summary judgment, rather than the entire case." *Neal* v. *United States*, 599 F. Supp. 3d 270, 287 (D. Md. 2022) (citing Fed. R. Civ. P. 56(a)); *see also* Fed. R. Civ. P. 56, advisory committee's note to 1946 amendment ("The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication . . . serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.").

genuine issue for trial." *Anderson*, 477 U.S. at 249. In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant[ ] and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility." *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001). At the same time, "[i]t is the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat* v. *Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks and citation omitted); *see also Celotex Corp.*, 477 U.S. at 323-324 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

**B. Knee Replacement Surgery Damages**

In an action brought under a federal court's diversity jurisdiction, the Court is to apply the substantive law of the state in which it sits. *Mathis* v. *Terra Renewal Servs. Inc.*, 69 F.4th 236, 242 (4th Cir. 2023); *Lewis* v. *Waletzky*, 422 Md. 647, 657 (2011). Under Maryland law, expert testimony may be required to establish causation of injuries. As this Court has explained, "[i]n many contexts, including those in which the injuries asserted are medical in nature, expert opinion is critical to establish causation. Indeed, in some circumstances the failure of a plaintiff to offer adequate expert opinion can result in summary judgment for the defendant." *Neal* v. *United States*, 599 F. Supp. 3d 270, 291 (D. Md. 2022). Interpreting Maryland law, the Fourth Circuit has explained:

> Expert testimony is not required . . . if the case falls into one of three categories: (1) if "a disability develops coincidentally with," or within a "reasonable time after," the subject act; or (2) if the proof of causation is "clearly apparent" from the nature and circumstances of the injury; or (3) if "the cause of the injury relates to matters of common experience, knowledge, or observation of laymen."

*Galloway* v. *Horne Concrete Const.*, 524 Fed. Appx. 865, 871 (4th Cir. 2013) (quoting *Wilhelm* v. *State Traffic Safety Comm'n*, 230 Md. 91, 99 (1962)). Applying the *Wilhelm* criteria, the

Fourth Circuit held in *Galloway* that "no experts [we]re needed to establish that being rear-ended by an eighteen-wheel tractor-trailer in a multi-vehicle interstate accident can cause lower-back injuries." 524 Fed. Appx. at 871; *see also Neal*, 599 F. Supp. 3d at 292-293 (collecting numerous examples of when an expert was and was not required to establish causation).

On the other hand, expert testimony is required "where the cause of an inj[u]ry claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after the negligent act)." *Wilhelm*, 230 Md. at 100 (collecting cases). The Appellate Court of Maryland[5] analyzed *Wilhelm*, surveyed case law, and concluded that:

> the causal relationship will almost always be deemed a complicated medical question and expert medical testimony will almost always be required when one or more of the following circumstances is present: 1) some significant passage of time between the initial injury and the onset of the trauma; 2) the impact of the initial injury on one part of the body and the manifestation of the trauma in some remote part; 3) the absence of any medical testimony; and 4) a more arcane cause-and-effect relationship that is not part of common lay experience.

*S.B. Thomas, Inc.* v. *Thompson*, 114 Md. App. 357, 382 (1997). There is "no hard and fast rule," *id.* at 382-383, and a determination of "whether the particular injury asserted requires expert testimony to establish causation is often a difficult and fact-sensitive undertaking," *Neal*, 599 F. Supp. 3d at 291. Nevertheless, it is "clear . . . that when there is a genuine issue as to whether there is a causal connection between an earlier injury and a subsequent disability, in the majority

[5] Effective December 14, 2022, the name of Maryland's highest court was changed from the "Maryland Court of Appeals" to the "Supreme Court of Maryland," and the name of Maryland's intermediate appellate court was changed from "Maryland Court of Special Appeals" to "Appellate Court of Maryland." *E.g.*, *Middleton* v. *Koushall*, Civil Action No. ELH-20-3536, 2024 WL 1967816, at *21 n.16 (D. Md. May 3, 2024). The undersigned uses the current names in this Memorandum Opinion.

of cases it will be a complicated medical question requiring, as a matter of law, expert medical testimony." *S.B. Thomas, Inc.*, 114 Md. App. at 383.

Applying this framework to the case at bar, it is evident that no expert would be required to establish that the pain Mr. Ballantine experienced immediately following the motor vehicle accident was causally connected to the alleged negligence of the USPS employee. As the Fourth Circuit observed in *Galloway*, such an injury fits into each of the three *Wilhelm* categories of circumstances when an expert is not required. 524 Fed. Appx. at 871. The same does not hold true for Mr. Ballantine's claim for damages based on his knee replacement surgery. The undisputed material facts establish that medical doctors had diagnosed Mr. Ballantine as having "end-stage left knee arthritis" and recommended knee replacement surgery for his left knee years prior to the motor vehicle accident. *See* I.B., *supra.* The surgery did not occur prior to the accident due to Mr. Ballantine's weight and a series of personal circumstances. *Id.*

Mr. Ballantine testified at his deposition that "the accident contributed to the exacerbation of" his left knee pain. ECF No. 38-2 at 44:5–6; *see also* ECF No. 38-3 ¶ 7 (Mr. Ballantine attesting that his "decision to have surgery was based on the significantly increased pain [he] experienced after the crash and the dramatic worsening of [his] left knee."). Yet, Mr. Ballantine also acknowledged that the accident did not "cause [his] pre-existing osteoarthritis and degradation of the knee that required surgery before the accident" (ECF No. 38-2 at 52:24–53:3), and that as early as April 2021—two years before the accident—doctors had referred him to a surgeon for knee replacement surgery (*id.* at 32:18–21).

The medical records and testimony of Dr. Margetas bear this out. Dr. Margetas testified that by April 2021, "the definitive treatment would be a knee replacement." ECF No. 38-1 at 14:10–11; *see also* ECF No. 37-7 at 1 (noting that Mr. Ballantine had "failed conservative care to include anti-inflammatory and injectables"). Diagnostic imaging taken the day of and eight days

after the accident revealed only preexisting degenerative osteoarthritis and no acute trauma. ECF Nos. 37-10 at 4; 37-11 at 2. Dr. Margetas also confirmed that Mr. Ballantine's decision to have the elective knee replacement surgery was not predicated upon an "emergent" medical condition. ECF No. 38-1 at 25:23–26:1. Indeed, once his weight was in range, Mr. Ballantine postponed scheduling surgery because he wanted to go on a hunting trip. ECF No. 38-2 at 54:12–23.

The Appellate Court of Maryland has stated that whether causation is a "complicated medical question" that requires expert testimony "calls for a robust dose of that not-so-common commonsense." *Hunt* v. *Mercy Med. Ctr.*, 121 Md. App. 516, 538 (1998). Commonsense dictates that expert evidence is required to establish the causal connection between the motor vehicle accident and Mr. Ballantine's knee replacement surgery. As described in *Wilhelm*, Mr. Ballantine's asserted need for surgery because of exacerbated pain is "subjective in nature" and the surgery in question did not occur until "some time after the negligent act." 230 Md. at 100. "[A]n otherwise simple issue of causation may become a complicated medical matter if under the facts of the case there is a possibility that the symptoms . . . arose from an independent source." *Hunt*, 121 Md. App. at 542. Here, that is precisely what the undisputed material facts establish. Dr. Margetas cannot supply evidence of causation because he expressly disavowed it in his deposition. He stated that he would *not* testify that the accident caused the need for the knee replacement surgery. ECF No. 38-1 at 29:7–11, 18–21. Rather, Mr. Ballantine's "osteoarthritis necessitated . . . a knee replacement." *Id.* at 30:25–31:1.

In opposition to partial summary judgment, Mr. Ballantine contends that "the crash *forced* [him] to undergo knee replacement surgery." ECF No. 38 at 1 (emphasis in original). In support of this argument, Mr. Ballantine relies on his own testimony and attestation. ECF Nos. 38 at 3–4; 38-3. Mr. Ballantine also rests on testimony from Dr. Margetas that the accident "aggravated" the left knee pain. ECF No. 38 at 3. Yet, none of these evidentiary sources address

the issue of causation. In other words, even if true, any aggravation of pain that prompted Mr. Ballantine to finally undergo the surgery—that had been recommended for years—does not establish a causal chain between the motor vehicle accident and the need for the knee replacement surgery itself. Mr. Ballantine has therefore not established the causation element of his claim for damages resulting from the knee replacement surgery, which he has the burden of proving at trial. *Strong* v. *Prince George's Cnty.*, 77 Md. App. 177, 183 (1988) ("It is beyond cavil . . . that in a negligence action, the plaintiff has the burden of proving, by a preponderance of the evidence that his damages were caused by the negligence of the defendant."). The United States, as "movant[,] may show that it is entitled to summary judgment by . . . 'pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case.'" *Neal*, 599 F. Supp. 3d at 295 (quoting *Celotex Corp.*, 477 U.S. at 325). This is precisely what the United States has done here. ECF No. 37-1 at 13–18. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Summary judgment will therefore be entered in favor of the United States on Mr. Ballantine's claim for damages based on the knee replacement surgery. The undersigned makes no finding as to the amount of damages to be excluded as not causally connected to the motor vehicle collision.

## III. CONCLUSION

For the foregoing reasons, the United States' motion for partial summary judgment is granted (ECF No. 37). A separate Order follows.

Date: October 30, 2026

/s/
Erin Aslan
United States Magistrate Judge